FLORA BLIVIN, *pro ami., vs.* JOANNA B. WHEELER.

WASHINGTON—JULY 7, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Parent and Child. Right to Services. Emancipation. Implied Contracts. Suit for Services by Minor.*

Where a minor whose father was dead went to live with the defendant as her child, under an arrangement made with the mother who still retained her parental rights over the minor, an action for services cannot be maintained by the minor against the defendant, since the contract is one between the mother of the minor and the defendant; and, further, because under a family relationship of such a nature no recovery can be had where there is no express contract to pay.

ASSUMPSIT. Heard on petition of defendant for new trial, and judgment for defendant.

STINESS, C. J. The plaintiff, a minor whose father is dead, and who sues by her next friend, went to live with the

defendant as her child, under an arrangement made with the plaintiff's mother.

The plaintiff sues to recover for services rendered while she lived with the defendant, which she claims were of a character not to be expected of one of her age, and beyond what properly belonged to her in her relation to the defendant.

The plaintiff was nine years old when the arrangement was made, and living with her mother, a widow, who, being unable to provide for her entire family, desired to find a home for her daughter.

The plaintiff lived with the defendant about seven years, when she left and shortly after was married.

Assuming from the verdict that improper work was required of the girl, amounting to a breach of the contract, the question still remains whether the plaintiff can maintain this action for services.

(1) The contract was made with the mother. She was supporting her child at the time, and was entitled to her earnings. *McGarr* v. *National Mills*, 24 R. I. 447.

The plaintiff claims an emancipation by her mother, but this is not shown. The mother did not relinquish her control of her child, but, on the contrary, continually showed her retention of it by visiting the defendant's house once or twice a year to see how the girl was getting on, to inquire about her duties and situation; remonstrating on occasions about her work; within six months of the time when the plaintiff left claiming wages for the girl's services. On previous occasions when the girl left, she received her at her house and returned her to the defendant. Emancipation is not presumed except from facts showing a renunciation of parental rights, and these do not appear in this case. Schouler's Dom. Rel. 4th ed. § 267, *a*. The conduct of the mother strongly rebuts an inference of emancipation.

It is further claimed that the remarriage of the plaintiff's mother, after the contract, operated as an emancipation.

The cases cited by the plaintiff in support of this point do not tend to establish an emancipation, so much as the inability of a married woman to contract, and to sue and be sued,

in connection with the fact that a stepfather supports the children. Thus, in *Hollingsworth* v. *Swedenborg*, 49 Ind. 378, the court held that a mother who had remarried could not maintain an action for the services of a minor child, because the contract was not a contract to pay the mother. In the opinion of the court is the *dictum* that they had found no case where the mother after marrying again had been held entitled to the services and wages of children of a former marriage earned after the marriage. But the court also added that if there had been "an express promise by the defendant to pay the wages to the mother proved, which the court found had not been proved, perhaps the rule would have been different."

The case does not strongly support the plaintiff's position.

In *Whitehead* v. *St. L. Ry. Co.*, 22 Mo. App. 60, the reason given by the court was that of the inability of a married woman to make a contract. This reason does not apply to the case at bar; because here the mother was a widow when the contract was made; and we know of no provision of law that abates a woman's contract upon a subsequent marriage.

The effect of a remarriage, however, is of no consequence in this case, for the reason that another principle controls it, which is that no recovery can be had in such cases where there is no contract to pay. The contract in this case was for a home, care, clothing, and schooling.

In *Strong* v. *Marcy*, 33 Kan. 109, it was held that a minor, under a contract similar to the one in this case, could recover damages upon the breach of the contract by the defendant. In that case there was a written relinquishment by the father of all control over the child. It does not touch the question in this case, but a subsequent case in Kansas does. In *Wyley* v. *Bull*, 41 Kan. 206, the court said "Where a person lives with a relative as one of the relative's family, neither has a cause of action against the other for compensation, for wages on the one side, or for board, lodging, etc., on the other side, or for anything else furnished by one to the other as a member of the family, except where an express contract is shown to exist between the par-

ties requiring that one or the other shall have compensation."

"When it is shown that the parties, though strangers to each other have, nevertheless, lived together as one family, as parent and child, for instance, and that no express contract was made for compensation to either party, none on the one side for wages and none on the other side for board, lodging, clothing, schooling, spending money, etc., then the same rule will apply as though the parties were near relatives."

"It was, therefore, wholly immaterial as to which, the plaintiff or the defendant, was at fault at the time when the plaintiff and the defendant severed their relations with each other, and when the plaintiff ceased to further reside with the defendant. While they lived together they did so as parent and son, being mutually beneficial to each other, and neither expected any additional compensation and neither can now recover any additional compensation."

In other cases cited by the plaintiff there was an express promise to pay for the minor's services by the defendant.

The statement of the law, substantially as we have quoted it above, is fully sustained in many cases. In *Neal* v. *Gilmore*, 79 Pa. St. 421, Judge Sharswood said: "If the parties lived together with the understanding that the Neals assumed the place and duty of parents—if the boys lived with them as their children and members of the family—the jury ought to have been instructed that the plaintiffs could not recover." In *Graham* v. *Stanton*, 177 Mass. 321, Holmes, C. J., said: "It would be a strong thing to say that an actual contract to pay for services could be inferred from the conduct of one who takes a child into his household under the name of daughter. The fact of his calling her so implies that he is not purporting to enter into relations with her on a business footing." This language is expressly significant, in view of the plaintiff's claim that the defendant had falsely represented that he had adopted her as his daughter. In *Kirchgassner* v. *Rodick*, 170 Mass. 543, the court held that where the plaintiff entered a family as a member she was not entitled, as matter of law, to recover for services.

To the same effect are *Thorp* v. *Bateman*, 37 Mich. 68; *Ormsby* v. *Rhoades*, 59 Vt. 505; *Smith* v. *Johnson*, 45 Iowa, 308; *Windland* v. *Deeds*, 44 Iowa, 98; *Appeal of Fross*, 105 Pa. St. 258; *Lunay* v. *Vantyne*, 40 Vt. 501; *Hammond* v. *Corbett*, 50 N. H. 501, a very fully considered case; *Armstrong* v. *Stone*, 9 Gratt. (Va.) 102.

The plaintiff invokes the doctrine that the law is tender in regard to infants, and that courts will look closely to their protection. We fully concur with this statement, which shows, at the same time, the principle upon which the right of action in cases of this kind is denied. Infants, deprived of a home by the death, misfortune, or vice of parents, stand greatly in need of sheltering care in a private home, rather than be sent as paupers to a poor-house. But people would be very shy in so taking children if they were to be liable afterwards to an action for services if the children thought, or were led to think, that they had not been properly treated. Without doubt there may be cases where a child will be unkindly used and excessive work required. So there are such cases between parents and children. The remedy, however, is not in an action for services. In the case before us, the plaintiff could have been removed from the defendant's house at any time, if her treatment was not satisfactory. At the times when she left, she returned voluntarily and with the consent of her mother, and after her marriage she and her husband went to live with the defendant—a fact well-nigh incredible, if she had been treated by the defendant as she now claims.

We are therefore of opinion that the plaintiff neither had the right to sue, nor did she show a cause of action. In view of this conclusion a new trial would be useless, and the cause is remitted to the Common Pleas Division with direction to enter judgment for the defendant.

*A. B. Crafts*, for plaintiff.

*Thomas H. Peabody, Edward M. Burke, Frank L. Hanley,* for defendant.