RAYMOND S. WILKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6569.   Promulgated August 9, 1946.

*Walter A. Barrows, Esq.*, for the petitioner.
*Carl A. Stutsman, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: Respondent contends that the case of *W. Frank Carter*, 36 B. T. A. 60, is controlling of decision here. That case, like this one, involved a law partnership and the effect upon the tax liability of surviving partners of payments made to the estate of a deceased partner. In that case the partnership agreement provided for the payment to the deceased partner's estate of a sum equal to one-half the amount actually received by the deceased partner during the two years immediately preceding his death, in lieu of all interest of his representatives in uncollected fees and in the library and office equipment of the firm, and in full payment for his "interest in the firm and its assets." Here the partnership agreement provided for a payment equal to the deceased partner's percentage of one-fourth of the net profits distributed by the firm during the two years preceding death, such sum representing his "interest in the assets and business of the firm." There, as here, the payment was of a definitely ascertainable sum, not payable out of fees subsequently collected by the firm; and in case no fees had been collected within the time fixed for payment, the estate would still have been entitled to receive the amount agreed upon.

It is thus apparent that there are many points of similarity between the two cases. The decision in the *Carter* case, however, was rested on the conclusion that the surviving partners "purchased all of the interest of the deceased [partner] in the firm and its assets." While the written agreement in the instant case speaks of the payment as representing the deceased partner's "interest in the assets and business of the firm," thus indicating that it was, at least in part, in consideration for an interest in partnership assets, the evidence is overwhelmingly to the effect that such a literal reading does not reflect the true agreement and understanding of the partners. Each partner had long understood that upon his death or retirement the only right he or his estate had was to his share of earned but uncollected fees. All the members had interpreted the agreement as providing a convenient rule of thumb for ascertaining or approximating the amount thereof

and a means of avoiding an administration of the partnership or a long accounting drawn out over a period of several years.

No incoming partner had ever paid in any capital upon his admission to the firm. The nature of the firm's business activity was such that capital was not a factor of any real significance. The books, typewriters, office supplies, etc., were merely incidental. The firm had no lease on its office space. In the partnership agreement it was expressly provided that the firm should not be deemed to possess any good will. In these circumstances, we can not agree with respondent that the *Carter* case is a complete answer to the problem presented here. In no true sense can the transaction before us be characterized as the purchase and sale of a partnership interest.

On the other hand, it does not follow that the surviving partners are entitled, as they did in the partnership return for 1941, to treat Barstow's estate as a partner in a continuing or successor firm and the payment made to the estate as a distributive share of partnership income. The agreement neither provided nor contemplated that his estate should be a partner in the firm, or that it should have a share in or percentage of partnership profits, as such, for a period of years or other fixed time following his death. The payment to which the estate was entitled was of a sum certain, payable at all events, having no aspects of a distributive share of partnership income. In this respect the instant case is unlike *Bull* v. *United States*, 295 U. S. 247, and *Walter T. Gudeon*, 32 B. T. A. 100, upon which petitioner relies. For the same reason, our recent decision in *Charles F. Coates*, 7 T. C. 125, is also distinguishable.

Nor does it follow that the surviving partners, in computing partnership income, are entitled as a matter of course to deduct the payment to Barstow's estate in its entirety in the year the payment was made. Although the partners considered that the formula agreed upon provided for a payment equivalent to a deceased partner's share of earned but uncollected fees, it is not suggested that all such fees in which the deceased had an interest were collected in the period in which payment was made to his estate. According to their own past experience in the death of one former partner, a period of almost seven years was required to complete the collections. If none, or only a small part thereof, were collected in the year before us, to permit a deduction of the entire payment to the estate in that year would distort, and not clearly reflect, the partnership income for the period.

In substance, under the partnership agreement and by virtue of the payment made, the surviving partners acquired from the decedent or his estate the right to collect in future years when due, and keep as their own, fees in which the decedent had an interest. For practical

purposes it was equivalent to the acquisition of a receivable for a cash consideration. If an individual, for example, should purchase an account receivable to be collected in a future period, clearly there would be no warrant under the revenue laws for deducting, against his current income from other sources, his capital outlay in the year he made it. We think the same is true of a partnership. Both the statute and the regulations provide that, in general, the net income of a partnership is to be computed in the same manner and on the same basis as in the case of an individual. Sec. 183, Internal Revenue Code; sec. 19.183-1, Regulations 103.

It follows, however, that in future periods as the fees are collected they will not be income *in toto* to the partnership, but only to the extent that they exceed the pro rata part of the capital outlay allocable thereto; and, if they do not exceed, but are less, a loss will result. If this record afforded any evidence as to what amounts, if any, of the fees in which Barstow had an interest were collected in the taxable year, we could perhaps make an appropriate downward adjustment of the partnership income for the year before us. But there is no evidence at all in this connection. It would be an assumption of fact, without any foundation in the record, and doubtless even a perversion of fact, to say that all such fees were collected within the year.

It is apparent that, as a result, a detailed and possibly intricate accounting process will be required on the part of the firm; and, to that extent, the purpose for which the particular provision of the partnership agreement here under consideration was adopted will not be accomplished. Doubtless, under the circumstances of such a case as we have before us, that result is a regrettable one; but we know of no other way under the law as it now exists in which the matter may be handled properly. We may observe, however, that the *Bull*, *Gudeon*, and *Coates* cases, *supra*, point to a method under which the purpose might be accomplished with the desired result.

For the reasons stated, the respondent's determination is approved.

*Decision will be entered for the respondent.*