### WILKINS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4228.

Circuit Court of Appeals, First Circuit.

May 23, 1947.

Robert G. Dodge, of Boston, Mass. (Walter A. Barrows, of Boston, Mass., on the brief), for petitioners.

Helen Goodner, Sp. Asst. to the Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., Helen R. Carloss and Louise Foster, Sp. Assts. to the Atty. Gen., on the brief), for Commissioner.

Before DOBIE, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This petition for review of a decision of the Tax Court of the United States raises the question of the deductibility by a member of a partnership engaged in the practice of law of his proportionate part of a certain payment made by his firm to the estate of a deceased partner. The applicable sections of the Internal Revenue Code are quoted in the margin.[1] The regulations are silent on the point. The facts were stipulated.

In 1941 the partnership of which the taxpayer was then a member operated under an agreement containing this provision: "In case of the death of any partner, the partnership shall not be deemed to be dissolved and the value of such partner's interest in the assets and business of the firm shall be taken to be a sum equivalent to his percentage of one quarter of the amount distributed by this firm and its predecessors as net profits during a period of two years next preceding the death, the term 'his percentage' meaning the percentage of the profits to which he was entitled at the time of his death. The sum thus determined to represent the value of such partner's interest in the assets and business of the firm shall be paid to his estate in such installments as the surviving partners shall

[1] "Sec. 181. Partnership not taxable.
"Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity." 26 U.S.C.A. Int.Rev.Code, § 181.
"Sec. 182. Tax of partners.
"In computing the net income of each partner, he shall include, whether or not distribution is made to him—
*   *   *   *   *   *   *   *
"(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b)." 26 U.S.C.A. Int. Rev.Code, § 182.
"Sec. 183. Computation of partnership income.
"(a) General rule. The net income of the partnership shall be computed in the same manner and on the same basis as in the case of an individual, except as provided in subsections (b) and (c)." 26 U.S. C.A. Int.Rev.Code, § 183.

find convenient, provided that at least one half of the sum shall be paid within six months and the whole within a year. The partnership shall not be deemed to possess any good-will, and if upon the death of any partner the surviving partners or a majority in interest of them shall continue the practice of law as a firm they shall have the right to use the name of the deceased partner as a part of the firm name if they so desire."

On March 3, 1941, a partner died and on April 1 following the surviving partners, including the taxpayer, formed a new partnership to carry on their practice. During the remainder of that year the new firm made payments to the estate of the former deceased partner according to the agreement in the stipulated total amount of $10,587.46. The partnership return for that year showed this payment and the amount distributed to each partner. On his individual return the taxpayer showed only the amount he actually received from the partnership which corresponded to his distributive share as shown on the partnership return.

The Commissioner eliminated the payments to the deceased partner's estate from the partnership return, allocated those payments among the surviving partners, including the taxpayer, in proportion to each partner's share in the profits of the firm, and in consequence determined a deficiency in the taxpayer's income tax for 1941. The Commissioner explained his action by the statement that in his opinion the amount distributed to the deceased partner's estate "constitutes a partial payment for the interest of the decedent in the partnership and not a distribution of earnings subsequent to the date of his death."

On the taxpayer's petition for redetermination of the deficiency assessed by the Commissioner the Tax Court disapproved the characterization of the payments to the deceased partner's estate as the price paid for the decedent's interest in the partnership. It based this rejection on findings that "no incoming partner had ever paid in any capital upon his admission to the firm"; that its "books, typewriters, office supplies, etc., were merely incidental", and

were not "regarded by the members as items of a capital nature in which they would have an interest upon retirement or death," each understanding "that upon his death or retirement, the only right he or his estate had was to his share of earned but uncollected fees"; that "the firm had no lease on its office space", and that the partners agreed that their firm should be deemed not to possess any good will. In short it found that capital was not a factor of any substantial significance in the firm's activities and that it had none in any real sense of the word. Therefore it concluded that the deceased partner had no interest in the firm which his estate could sell and hence "In no true sense can the transaction before us be characterized as the purchase and sale of a partnership interest."

The Tax Court sustained the deficiency assessed by the Commissioner, however, on the ground that the payments to the deceased partner's estate constituted the price paid by the continuing firm for the decedent's interest in fees earned by the firm prior to his death but not collected until thereafter. It noted that the "payment to which the estate was entitled was of a sum certain, payable at all events having no aspects of a distributive share of partnership income", which it said distinguished this case from Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Walter T. Gudeon, 32 B.T.A. 100; and Charles F. Coates, 7 T.C. 125 and then it said: "In substance, under the partnership agreement and by virtue of the payment made, the surviving partners acquired from the decedent or his estate the right to collect in future years when due, and keep as their own, fees in which the decedent had an interest." This it said for "practical purposes * * * is equivalent to the acquisition of a receivable for a cash consideration," and finding no statutory warrant for deducting a capital outlay in the year made from current income from other sources, it sustained the Commissioner's determination of deficiency.

It conceded, however, that in the future as the fees are collected they will not be income in toto to the partnership, but will be income to it only to the extent that they

exceed the pro rata part of the capital outlay allocable thereto. But it said that since there was no evidence to show the amount of these fees collected in the taxable year, and since it would be an unwarranted assumption and doubtless a perversion of fact to say that all of them had been collected in that year, there could be no "downward adjustment. of the partnership income" for the year in question on this account. It recognized that the possibility of obtaining this deduction afforded small consolation to the surviving partners since to take it they would be obliged to keep elaborate accounts over a number of years, as they had done. before when a partner died or retired, with the result that "the purpose for which the particular provision of the partnership agreement here under consideration was adopted will not be accomplished." But, it observed in conclusion, "the Bull, Gudeon and Coates cases, supra, point to a method under which the purpose might be accomplished with the desired result."

The taxpayer takes the position that the decision of the Tax Court is unrealistic. He says that in actual fact no partner in the firm thought of himself as buying anything from the decedent's estate, and that the decedent when he signed the partnership agreement did not think he was committing his estate after his death to a sale of anything to his surviving associates. On the contrary, he says that the partners all really thought that a deceased partner's share of the earnings of the firm down to the date of his death belonged to him because he had earned it while he was alive, even though some of his earnings necessarily would not be collected until after his death, and that with this thought in mind, the partners agreed upon a convenient rule of thumb for approximating the amount of such earnings in order to avoid a long drawn out accounting and settlement over a period of years as had been required on previous occasions. And he says that the use of a rule of thumb instead of an actual accounting does not alter the nature of the payment. Therefore he argues that the Tax Court exalted theory over reality when, in the face of the understanding of the parties, it held that for income tax purposes it must be deemed that the deceased partner sold his interest in the future income of the partnership and the continuing partners bought that interest.

The taxpayer's positive contention is that although the money paid to the estate of the deceased partner in 1941 passed through the hands of the continuing firm, the surviving partners had no beneficial interest whatever in it since under the terms of the partnership agreement they were under an absolute legal obligation to pass it on to the deceased partner's estate. Therefore he argues that the payment in question was either a distribution of partnership income not taxable to the surviving partners, or else that it was a deductible expense of the partnership and so not includible in the partnership income taxable to them.

We see strength in the taxpayer's proposition, but it seems to us that the decision in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, and later decisions of the Supreme Court applying the rule of that case, indicate unmistakably that the decision of the Tax Court is beyond the scope of our power of review.

The taxpayer does not, nor can he, make the contention that the decision of the Tax Court is squarely in conflict with some legal imperative—that it is precluded by some applicable statute, regulation having the force of one, or principle of judge-made law. He contends in substance that the Tax Court erred in its characterization of a business transaction for income tax purposes. Thus as we see it no "clear cut question of law" is presented for our consideration. Dobson v. Commissioner, 320 U.S. 489, 506, 64 S.Ct. 239, 249, 88 L. Ed. 248; Trust of Bingham v. Commissioner, 325 U.S. 365, 371, 65 S.Ct. 1232, 89 L.Ed. 1670. Instead we have the question of the classification with reference to income taxation of a given transaction entered into for business reasons. And the Supreme Court, noting that the usefulness of the judges of the Tax Court as experts "lies primarily in their ability to examine relevant facts of business to determine whether or not they come under statutory language" (John Kelley Co. v. Commissioner, 326 U.S. 521, 529, 66 S.Ct. 299, 304.

90 L.Ed. 278) has held that this question of classification is for the Tax Court within, as Mr. Justice Frankfurter said in his concurring opinion in Trust of Bingham v. Commissioner, supra, 325 U.S. 381, 65 S. Ct. 1240, "the outward limits of categories and classifications expressing legislative policy." To quote further from this concurring opinion (325 U.S. 379, 65 S. Ct. 1239, "questions that do not involve disputes as to what really happened * * * but instead turn on the meaning of what happened as a matter of business practice or business relevance", although "treacherously near to what abstractly are usually characterized as questions of law" are "in the domain of financial and business interpretation in relation to taxation as to which the Tax Court presumably is as well informed by experience as are the appellate judges and certainly more frequently enlightened by the volume and range of its litigation", and so are within the rule of the Dobson case. Thus the Supreme Court has held that whether certain payments made by a corporation to the holders of its securities constitute payments of "interest" or payments of "dividends" presents a question for the Tax Court within the Dobson rule (John Kelley Co. v. Commissioner, supra) and whether a given transaction involving personal property used in a development under an oil and gas lease constitute a "sale" or a "sublease" thereof "is the kind of issue reserved for the Tax Court" under the same rule. Choate v. Commissioner, 324 U.S. 1, 3, 4, 65 S.Ct. 469, 470, 89 L.Ed. 653.

Therefore, since this case turns upon its own peculiar circumstances rather than upon a generalizing principle, and since we cannot say that there is no rational basis for the conclusion reached by the Tax Court (Dobson v. Commissioner, supra, 320 U.S. 501, 64 S.Ct. 246, 88 L.Ed. 248) we conclude, although the matter may not be wholly free from doubt, that our "doubts would have to be stronger than they are to displace the informed views of the Tax Court." Commissioner v. Estate of Bedford, 325 U.S. 283, 292, 65 S.Ct. 1157, 1161, 89 L.Ed. 1611.

The decision of the Tax Court is affirmed.